**No. 22-1858**

# In the
# United States Court of Appeals
## for the Seventh Circuit

AMORY INVESTMENTS LLC, et al.,

*Plaintiffs-Appellants,*

v.

UTRECHT-AMERICA HOLDINGS, INC., et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:16-cv-08637.
The Honorable **Thomas M. Durkin**, Judge Presiding.

## APPELLANTS' COMBINED PETITION FOR PANEL REHEARING AND/OR REHEARING *EN BANC*

SCOTT E. GANT (*Counsel of Record*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727
sgant@bsfllp.com

*Counsel for Appellants*

 

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-1858

Short Caption: Amory Investments LLC, et al. v. Utrecht-America Holdings, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✓] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Revised: Amory Investments LLC; Campbell Soup Company; Campbell Soup Supply Company, L.L.C.; Carina Ventures LLC; Target Corporation

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

See addendum A.

(3) If the party, amicus or intervenor is a corporation:

    i) Identify all its parent corporations, if any; and

    See addendum A.

    ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    See addendum A.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s Scott E. Gant     Date: July 28, 2023

Attorney's Printed Name: Scott E. Gant

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✓]    No [ ]

Address: Boies Schiller Flexner LLP, 1401 Washington Avenue, NW, Washington, DC 20005

Phone Number: (202) 237-2727     Fax Number: (202) 237-6131

E-Mail Address: sgant@bsfllp.com

rev. 12/19 AK

# DISCLOSURE STATEMENT ADDENDUM A

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, Plaintiffs-Appellants each state as follows:

1. **Amory Investments LLC** states it is not the subsidiary of any parent corporation, and no publicly held corporation owns more than 10% of its stock. Amory Investments LLC additionally discloses that it is indirectly owned by Burford Capital Ltd., a publicly held corporation. Attorneys from Boies Schiller Flexner LLP and Jared S. Kosoglad P.C.[1] have appeared for Amory Investments LLC in this case (including proceedings in the District Court) or are expected to appear for it in this Court.

2. **Campbell Soup Company** states it is not the subsidiary of any parent corporation, and no publicly held corporation owns more than 10% of its stock. Attorneys from Boies Schiller Flexner LLP and Johnson & Bell, Ltd. have appeared for Campbell Soup Company in this case (including proceedings in the District Court) or are expected to appear for it in this Court.

3. **Campbell Soup Supply Company L.L.C.** states it is a wholly-owned subsidiary of Campbell Soup Company, and no publicly held corporation owns more than 10% of its stock. Attorneys from Boies Schiller Flexner LLP and Johnson & Bell, Ltd. have appeared for Campbell Soup Supply Company L.L.C. in this case (including proceedings in the District Court) or are expected to appear for it in this Court.

---

[1] Mr. Kosoglad no longer represents Amory Investments LLC.

4. **Carina Ventures LLC** [2] states it is not the subsidiary of any parent corporation, and no publicly held corporation owns more than 10% of its stock. Carina Ventures LLC additionally discloses that it is indirectly owned by Burford Capital Ltd., a publicly held corporation. Attorneys from Boies Schiller Flexner LLP and Seeger Weiss LLP have appeared for Carina Ventures LLC in this case (including proceedings in the District Court) or are expected to appear for it in this Court.

5. **Target Corporation** states it is not the subsidiary of any parent corporation, and no publicly held corporation owns more than 10% of its stock. Attorneys from Boies Schiller Flexner LLP and Johnson & Bell, Ltd. have appeared for Target Corporation in this case (including proceedings in the District Court) or are expected to appear for it in this Court.

---

[2] Appellant Sysco Corporation recently assigned its claims in this case to Carina Investments LLC. Carina therefore joins this Petition. A motion to substitute Carina for Sysco is pending in the District Court. ECF 6630. Sysco is not the subsidiary of any parent corporation, and no publicly held corporation owns more than 10% of its stock.

## TABLE OF CONTENTS

                                                                                **Page**

TABLE OF AUTHORITIES ...................................................................................... ii

FEDERAL RULE OF APPELLATE PROCEDURE 35(b)(1) STATEMENT ........................... 1

ARGUMENT ............................................................................................................. 1

I.     The Panel's Decision Conflicts With Supreme Court Precedents by Subjecting the Complaint to Heightened Scrutiny in Response to a Rule 12(b)(6) Motion Because the Complaint Was Filed With the Benefit of Some Discovery, and by Endorsing the District Court "Effectively Grant[ing] Summary Judgment" in Response to a Rule 12(b)(6) Motion ................. 2

II.    The Panel's Decision Also Misapprehends the Allegations in the Complaint ........................................................................................................ 4

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................1, 3

*Amory Invs. LLC v. Utrecht-Am. Holdings, Inc.*,
    No. 22-1858, 2023 WL 4673282 (7th Cir. July 21, 2023) ..................................... *passim*

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988) ................................................................................................1, 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................5

*Doss v. Clearwater Title Co.*,
    551 F.3d 634 (7th Cir. 2008) ........................................................................................4

*Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*,
    983 F.3d 307 (7th Cir. 2020) ........................................................................................4

*Harris v. Nelson*,
    394 U.S. 286 (1969) ................................................................................................1, 3

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................................................1, 3

**Rules:**

Fed. R. App. P. 35(b)(1) ....................................................................................................1

Fed. R. Civ. P. 12 ..........................................................................................................2, 3

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 2

Fed. R. Civ. P. 12(d) .....................................................................................................3, 4

Fed. R. Civ. P. 56 ......................................................................................................2, 3, 4

Fed. R. Civ. P. 56(d) ..........................................................................................................2

**FEDERAL RULE OF APPELLATE PROCEDURE 35(b)(1) STATEMENT**

The Panel's Decision conflicts with decisions of the Supreme Court of the United States. A Federal Rule is "as binding as any statute duly enacted by Congress," *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988), and courts "are not free to alter it except through the process prescribed by Congress in the Rules Enabling Act." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 861 (1999); *see also Harris v. Nelson*, 394 U.S. 286, 298 (1969) (Courts "have no power to rewrite the Rules by judicial interpretations."); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("The text of a rule . . . limits judicial inventiveness."). In contravention of these directives, the Panel endorsed and affirmed the District Court's order "effectively grant[ing] summary judgment" for the Rabobank Defendants when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), without following the requirements of Rule 56. *Amory Invs. LLC v. Utrecht-Am. Holdings, Inc.*, No. 22-1858, 2023 WL 4673282, at *1 (7th Cir. July 21, 2023). This warrants rehearing by the Panel or consideration by the full Court.

**ARGUMENT**

As Appellants explained to this Court, the District Court subjected their complaint to an improper, heightened pleading standard because it believed "extensive discovery already ha[d] taken place." A3.[1] The Panel's Decision acknowledged the District Court "effectively granted summary judgment," observing that dismissal under Rule 12(b)(6)

---

[1] The complaint was filed with the benefit of only third-party discovery from Rabobank initiated by parties other than Appellants. At the time claims against Rabobank were first dismissed, Appellants and Rabobank were negotiating additional document and deposition discovery from Rabobank, and discovery from other defendants was ongoing.

and summary judgment "merged" because "before filing their complaint against Rabobank, plaintiffs had the benefit of discovery against Rabobank . . . ." *Amory Invs.*, 2023 WL 4673282, at *1. The Panel's Decision endorsing the District Court's order "effectively grant[ing] summary judgment" to the Rabobank Defendants when deciding a Rule 12(b)(6) motion, and embracing the "merger" of Rule 12(b)(6) and Rule 56, is contrary to Supreme Court precedents (and the Rules of Civil Procedure).

In addition, the Panel overlooked or misapprehended the allegations against Rabobank when it concluded "the complaint alleges [only] two varieties of evidence" and stated it "see[s] in these emails nothing but unilateral action by Rabobank." *Amory Invs.*, 2023 WL 4673282, at *2.

I.  **The Panel's Decision Conflicts With Supreme Court Precedents by Subjecting the Complaint to Heightened Scrutiny in Response to a Rule 12(b)(6) Motion Because the Complaint Was Filed With the Benefit of Some Discovery, and by Endorsing the District Court "Effectively Grant[ing] Summary Judgment" in Response to a Rule 12(b)(6) Motion**

Rabobank filed a motion to dismiss under Rule 12(b)(6). It did not file a motion for summary judgment. Rule 12 and Rule 56 serve different purposes and are governed by different procedures. Had Rabobank moved for summary judgment, Appellants would have responded in accordance with that Rule, including exercising their right to seek deferral of consideration of the motion pursuant to Rule 56(d), since at the time claims against Rabobank were first dismissed, Rabobank had provided limited discovery as a third-party in response to subpoenas and the parties were negotiating document and deposition discovery from Rabobank as a defendant. Appellants' Br. 27 n.13. Discovery against other alleged co-conspirators was also ongoing. Indeed, in a deposition

2

conducted after the District Court dismissed Rabobank as a defendant, the former CEO of producer defendant Pilgrim's Pride (who was a party to one of the Adriaan Weststrate emails discussed below) refused to answer questions about evidence implicating Rabobank in the conspiracy, invoking his Fifth Amendment right against self-incrimination. *See* Oral Argument at 22:38.[2] Moreover, if the District Court intended to convert the Rule 12 motion into a Rule 56 motion, all parties were required to "be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). No such notice was provided in this case.

There is no legal authority to permit a District Court to convert a Rule 12 motion into a Rule 56 motion without providing notice to the non-moving party. Nor is there any authority for the "merger" of those Rules into a new or hybrid Rule. A Federal Rule is "as binding as any statute duly enacted by Congress," *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988), and courts "are not free to alter it except through the process prescribed by Congress in the Rules Enabling Act." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 861 (1999); *see also Harris v. Nelson*, 394 U.S. 286, 298 (1969) (Courts "have no power to rewrite the Rules by judicial interpretations."); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("The text of a rule . . . limits judicial inventiveness."). It is of "overriding importance" that courts "be mindful" the Federal Rules "set[] the requirements they are bound to enforce." *Amchem Prods.*, 521 U.S. at 620.

---

[2] *https://media.ca7.uscourts.gov/sound/2023/mm.22-1858.22-1858_01_06_2023.mp3.*

The Panel's Decision should be vacated. *See also Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 318 (7th Cir. 2020) (reversing judgement on the pleadings because district court failed comply with Rules 12(d) and 56 and ignored the non-movant's "repeated objections that there were material fact issues requiring development and resolution"); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 636 (7th Cir. 2008) (reversing judgment in favor of defendant on 12(b)(6) motion because district court failed to view the alleged facts in the light most favorable to the pleader and failed to provide notice that the motion would be treated as one for summary judgment under Rule 56).

## II.     The Panel's Decision Also Misapprehends the Allegations in the Complaint

In addition to erroneously endorsing and affirming the District Court's subjecting the complaint to a heightened standard, the Panel's Decision overlooked or misapprehended the complaint's allegations.

As summarized by the Panel, the District Court determined all the complaint "allege[d] is that Rabobank set out to protect its interests through unilateral action. The complaint does not allege that Rabobank <u>served as a conduit</u> for the producers' agreement, that it <u>helped them coordinate their production</u> and <u>catch cheaters</u> (the bane of any cartel), or even that Rabobank <u>knew that the producers were coordinating among themselves</u>." *Amory Invs.*, 2023 WL 4673282, at *1 (emphasis added). The Panel similarly observed the complaint "does not allege that Rabobank facilitated an agreement among producers or helped with its enforcement," or "that Rabobank knew" about the chicken producers' cartel. *Id.*

4

The Panel's characterization of the complaint is wrong. It plainly alleges:

- "Although Rabobank does not buy, produce or distribute chickens, Rabobank <u>actively facilitated and participated in coordination to achieve supply cuts</u>, making production cuts a <u>shared goal with producers</u>." A14 ¶ 9 (emphasis added).

- "Rabobank's role spreading 'the old 'production cuts' gospel' among 'poultry companies' was an important <u>mechanism for both securing producer participation</u> in, and <u>monitoring compliance</u> with, the alleged <u>collusive activities of the producer defendants</u>." A15 ¶ 13 (emphasis added).

- "Rabobank's role in the anticompetitive conduct also included encouraging communication among broiler producer competitors, and <u>serving as a conduit</u> for communications between and among those competitors." A19 ¶ 31 (emphasis added).

- "Rabobank also communicated directly with producers as part of an effort to <u>coordinate industrywide action</u> with respect to production and/or pricing." A19 ¶ 32 (emphasis added).

These statements are illustrated with allegations of numerous specific statements by Rabobank, providing "factual enhancement" that make Appellants' antitrust claim plausible, and "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

The Panel's Decision claimed all of the complaints' allegations fall into one of two "varieties": (1) "intra-Rabobank emails [that] could not have promoted or facilitated

5

cooperation among producers" and (2) "a pair of emails from Adriaan Weststrate, the head of Rabobank's poultry-lending section, to executives at producers Perdue and Pilgrim's Pride" that merely "[d]eliver[ed] a lesson in microeconomics[.]" *Amory Invs.*, 2023 WL 4673282, at *2. This gloss on the complaint is incorrect for at least three reasons.

First, the Panel Decision's two categories entirely overlook communications *between* Rabobank and other defendants, including via emails and at trade association events, which discuss coordinated industry-wide production cuts and "discipline"—a euphemism for adherence to the conspiracy. *E.g.*, A15-16 ¶ 15; A16 ¶ 19; A18 ¶ 29; A20 ¶ 34; A21 ¶ 36.

Second, disregard of the internal Rabobank emails simply because they stayed within the company ignores that they report on external communications with other defendants or otherwise contain evidence that Rabobank knew about defendants' agreement to cut production, facilitated that agreement, and helped with its enforcement. *E.g.*, A13 ¶ 13 (internal Rabobank email recounting Rabobank employee's conversation with O.K. Foods employee, who conveyed that he and a Tyson employee discussed production cuts); A16 ¶¶ 16-17, 25-27 (emails discussing messages to poultry companies to enforce the production cuts).[3]

Third, in characterizing Weststrate's emails as mere "Economics 101" advice, the Panel's Decision failed to draw reasonable inferences in Appellants' favor as it should

---

[3] The emails described in complaint paragraphs 25, 26, and 27 are not internal emails at all, but rather contain correspondence between Adriaan Weststrate of Rabobank and an external consultant employed by Express Markets, Inc., a subsidiary of alleged co-conspirator Agri Stats, Inc.

6

have done when considering the motion to dismiss. Weststrate's choice of words—"*you can count on us* to *help you*," "preaching the gospel *to other poultry companies*," and "the *old* 'production cuts' gospel," A14-15 ¶¶ 10-11 (emphasis added)—can be reasonably interpreted as evidence of an agreement by Rabobank with at least some producer defendants. Moreover, as the Panel's Decision notes, Rabobank "can be liable under § 1 [of the Sherman Act] if they facilitate[d] the making or enforcement of an agreement among producers." *Amory Invs.*, 2023 WL 4673282, at *2. The "old production cut gospel" emails show that Rabobank did just that—it told some producers it was also exhorting **other producers** to cut production. That is not an Economics 101 lesson to an individual client.

Other allegations overlooked by the Panel underscore Rabobank's role as a conduit for communications between and among the conspirators, *e.g.*, A19 ¶ 31 (allegation that Weststrate expressly "relayed" information about a "strategy" between two chicken producers), and as a facilitator and enforcer of an industry-wide agreement to cut production. *E.g.*, A17 ¶ 23 (allegations that Rabobank pressed the producer defendants to make their "fair share" of cuts and monitored whether each had done so).

Viewed in the light most favorable to Appellants, these allegations are sufficient to state an antitrust claim against Rabobank, and discovery should have been allowed to proceed. The Panel's Decision should be vacated.

Dated: July 28, 2023
                        <u>*Scott E. Gant*</u>
                        Scott E. Gant (Counsel of Record)
                        Boies Schiller Flexner LLP
                        1401 New York Avenue, NW
                        Washington, DC  20005
                        Tel: (202) 237-2727
                        E-mail: sgant@bsfllp.com

*Counsel for Plaintiffs Amory Investments LLC, Campbell Soup Company, Campbell Soup Supply Company, L.L.C., Carina Ventures LLC, and Target Corp.*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 35(b)(2)(A) and 40(c)(1), because this document contains 1,884 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO (Version 2306) in 12-point style font.

*Scott E. Gant*
Scott E. Gant (Counsel of Record)

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2023, Appellants' Combined Petition for Panel Rehearing and/or Rehearing *En Banc* was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*Scott E. Gant*
Scott E. Gant (Counsel of Record)